**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

**JOHN C. DEAL,**
  **Plaintiff,**

                Case No. 06-cv-901
v.                Judge Gregory L. Frost
                Mark R. Abel

**KEGLER BROWN HILL & RITTER
CO. L.P.A.,**
  **Defendant.**

## OPINION AND ORDER

  Defendant, an Ohio law firm ("Defendant" or the "Firm"), maintained a deferred compensation/retirement account for Plaintiff ("Of-Counsel Plan") that is subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 USCS §§ 1001 *et seq*. The parties dispute the ERISA categorization of the Of-Counsel Plan and its terms. This matter is before the Court on the parties' cross motions for summary judgment (Doc. ## 23, 25) and on Defendant's motion to strike certain portions of Plaintiff's affidavit submitted in support of his motion for summary judgment and to strike certain portions of Plaintiff's deposition testimony ("Defendant's Motion to Strike") (Doc. # 24). For the reasons that follow, the Court **DENIES in part and DENIES as MOOT in part** Defendant's Motion to Strike, **DENIES** Defendant's Motion for Summary Judgment, and **DENIES in part and GRANTS in part** Plaintiff's Motion for Summary Judgment.

### I. FACTS

  Plaintiff joined the Firm in an of-counsel capacity in September 1988 and remained in

that capacity until his employment ended[1] in 2004. (Doc. # 25, Ex. A: Deposition of John Deal ("Pl. Dep.") at 9-10, 14.) From approximately September 1988 until 2000, Defendant used the same formula system to compensate its directors and certain attorneys who were of-counsel ("Formula Compensation System"), including Plaintiff. *Id.* at 15-18. The Formula Compensation System consists of various components including, but not limited to work credit, a client initiation credit, and a credit for administrative activities which generated a dollar figure for each director and of-counsel attorney. *Id.*

During the period when it used the Formula Compensation System to compensate its directors and certain of-counsel, Defendant used an accrual-based accounting system but paid its attorneys on a cash basis. (Doc. # 25, Ex. C: Deposition of Melvin Weinstein[2] ("Weinstein Dep.") at 7-8.) That is, when accrued income exceeded cash income for any year (*e.g.,* because of accounts receivable, work in progress and time that was written off), the excess was allocated to directors and certain of-counsel based on the Formula Compensation System. *Id.* at 8. For those years in which the Firm's cash available for distribution exceeded its accrual income, the amounts in the bookkeeping accounts would be reduced. *Id.* The allocations and reductions were made to bookkeeping accounts in the Firm's records. *Id.* at 8-9

On September 23, 1992, the Firm adopted the Director Plan and Agreement ("Director Plan"). *Id.* at 11, 16. After the adoption of the Director Plan, the bookkeeping accounts were referred to as "retirement accounts." *Id.* at 10-11, 13, 17. Under the Director Plan, director

---

[1] Defendant refers to Plaintiff's departure from the Firm as a termination and as a resignation. (Doc. # 25 at 3-9.)

[2] Mr. Weinstein is a director and shareholder of the Firm and was chosen to testify on behalf of Defendant. Weinstein Dep. at 5-7.

2

participants could begin collecting installments from their retirement accounts at age 65 over a period of seven years (84 months). (Doc. # 25, Ex. F, Section 5.1 of the Director Plan.) Director participants who left the Firm prior to age 65 were entitled, beginning at age 65, to a ratable portion of their retirement accounts, based on the number of years they were with the Firm and the years remaining until they reached the age 65. *Id.* Further, as a condition of receiving payments from their retirement accounts, director participants who left the Firm could not engage in the private practice of law in the State of Ohio. *Id.* at Article VI(c).

To be eligible to participate in the Director Plan, it was necessary for the attorney either to be a director/partner of the Firm or to be a signatory of the Director Plan. *Id.* at Section 2.13. There were 29 signatories to the Director Plan at its inception, each of whom was a director of the Firm. Beside each signature on the Director Plan was a date reflecting the date the signatories had become either partners or directors. (Doc. # 23-7, Deposition of Jack A. Bjerke[3] ("Bjerke Dep.") at 13-14.) Beside the signatures and dates were initial retirement account balances, which were, in essence, each director's share of the Firm's equity on an accrual basis. *Id.* at 14.

On September 30, 1992 the Firm reported to the Department of Labor ("DOL") that it had adopted the Director Plan and that the plan qualified as a top hat plan under ERISA. (Doc. # 23-8, Ex. 8, ("DOL Reporting Letter").[4]

---

[3]Mr. Bjerke is an attorney who was formerly with the Firm. Bjerke Dep. at 4.

[4]On April 20, 1992 and July 20, 1992, the Department of Labor ("DOL") published notices in the Federal Register giving employers with "top hat" retirement plans an opportunity to come into compliance with ERISA. *See* Assessment of Civil Penalties for Failure to File Timely 5500 Reports, 57 Fed. Reg. 14436-01 (1992); Assessment of Civil Penalties for Failure to File Timely Annual Return/Reports - - Top Hat Plans and Pre-Grace Period Late Filings, 57

In a memorandum dated October 13, 1992 the Firm reviewed the potential differences between the Director Plan and the Of-Counsel Plan. (Doc. # 23-8, Ex. 6, ("October 1992 Memorandum").)

In a memorandum dated January 7, 1994 the Firm contemplated entering into a separate written deferred compensation plan with certain of-counsel attorneys, including Plaintiff; however, no such separate written arrangement was ever created. (Doc. # 23-8, Ex. 5, ("January 1994 Memorandum").) Instead, the Of-Counsel Plan at issue in this action is an oral agreement. The parties disagree sharply as to the terms of the oral Of-Counsel Plan.

In January 2000, Defendant discontinued its Formula Compensation System. Pl. Dep. at 20. As a result, from that time until he left his employment with the Firm, Plaintiff was paid a salary, Pl. Dep. at 20, and no additional amounts were credited to Plaintiff's retirement account. Pl. Dep. at 117. The amount of Plaintiff's retirement account at the time of his departure was $70,213.[5] Weinstein Dep. at 40.

On September 27, 2007 Plaintiff filed Plaintiff's Motion for Summary Judgment (Doc. # 23) and on October 9, 2007 Defendant filed its response in opposition to that motion in conjunction with its Motion for Summary Judgment (Doc. # 25). On October 19, 2007 Plaintiff filed his opposition to Defendant's Motion for Summary Judgment in conjunction with his reply in support of his Motion for Summary Judgment. (Doc. #26.) On October 25, 2007 Defendant

---

Fed. Reg. 33019-01 (1992) (A "top hat" plan is a retirement plan established and offered only to select, highly compensated individuals. *Wolcott v. Nationwide Mut. Ins. Co.*, 884 F.2d 245, 250 n.2 (6th Cir. 1989) (quoting 29 U.S.C. § 1051(2)).)

[5] Plaintiff agreed to this amount for the purpose of this motion. (Doc. # 26 at 5.)

filed its reply in support of its Motion for Summary Judgment. (Doc. # 28.)

On October 9, 2007 Defendant filed its motion to strike certain portions of Plaintiff's affidavit submitted in support of his motion for summary judgment and to strike certain portions of Plaintiff's deposition testimony. (Doc. # 24.) Plaintiff filed an opposition memorandum to that motion on (Doc. # 27.) Defendant did not file a reply in support of its motion to strike.

## II. MOTION TO STRIKE

Defendant moves to strike certain portions of Plaintiff's affidavit and certain portions of Plaintiff's deposition. This Court may use its inherent power to manage its docket to strike documents. *See Gilleland v. Schanhals*, 55 Fed. Appx. 257, 260 (6th Cir. 2003)

With regard to Plaintiff's affidavit, this Court has not relied on it in this Opinion and Order. Thus, the Court **DENIES as MOOT** that portion of Defendants' motion.

With regard to Plaintiff's deposition, Defendant argues that this Court should strike the portions that contain legal conclusions and opinions which are not proper under Rule 56(e). *See* Fed. R. Civ. P. 56(e) (on summary judgment this Court may review "such facts as would be admissible in evidence"). This Court, however, finds that Plaintiff's deposition constitutes the type of facts that are admissible into evidence and will not strike portions of it. Of course, the Court need not rely on Plaintiff's legal conclusions, if in fact he makes any.

Accordingly, the Court **DENIES** Defendant's Motion to Strike. (Doc. # 24.)

## III. MOTIONS FOR SUMMARY JUDGMENT

### A. Summary Judgment Standard

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *See Muncie Power Products, Inc. v. United Tech. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

In viewing the evidence, the Court must draw all reasonable inferences in favor of the nonmoving party, who must set forth specific facts showing that there is a genuine issue of material fact for trial. *Id*. (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)); *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234 (6th Cir. 2003). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Muncie*, 328 F.3d at 873 (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248 (1986)). Consequently, the central issue is " 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52).

**B. Analysis**

Both parties agree that the oral Of-Counsel Plan is governed by ERISA. (Doc. # 25 at 13: "The parties agree that [Plaintiff]'s deferred compensation benefit, initially referred to as a 'deferred compensation account' and subsequently referred to as a 'retirement account,' is provided under an ERISA 'employee pension benefit plan' within the meaning of ERISA Section 3(2)(A) (29 U.S. Section 1002(2)(A)"; Doc. # 23 at 9, 11(same).)  However, the parties

disagree as to whether or not the Of-Counsel Plan constitutes a "top hat" plan under ERISA and they disagree as to the substantive terms of the Of-Counsel Plan.

**1. Is the Of-Counsel Plan a Top Hat Plan?**

Defendant contends that the Of-Counsel Plan qualifies as a top hat plan under ERISA. This Court disagrees.

ERISA was established to protect workers and their families from losing anticipated benefits. *Bakri v. Venture Mfg. Co.*, Case No. 3-:03-CV-405, 2005 U.S. Dist. LEXIS 26076, 36 Employee Benefits Cas. (BNA) 1219 (S.D. Ohio Oct. 31, 2005), *rev'd and remanded* at 473 F.3d 677 (6th Cir. 2007) (reversing district court's conclusion that the ERISA plan qualified as a top hat plan). "ERISA addresses all retirement and deferred compensation plans and is a 'remedial statute to be liberally construed in favor of employee benefit fund participants.' " *Id.* (citing *Carrabba v. Randalls Food Markets, Inc.*, 38 F. Supp.2d 468, 477 (N.D. Tex. 1999) and *Kross v. Western Electric Co., Inc.*, 701 F.2d 1238, 1242 (7th Cir. 1983), *aff'd*, 252 F.3d 721 (2001)). "Exemptions from ERISA coverage should, therefore, be confined to their narrow purpose." *Id.*

One exemption to most of the ERISA requirements is for what is known as a "top hat" plan. *Id.* "A 'top hat plan' is . . . 'a plan which is unfunded and is maintained by an employer primarily for the purposes of providing deferred compensation for a select group of management or highly compensated employees.' " *Wolcott v. Nationwide Mut. Ins. Co.*, 884 F.2d 245, 250 n.2 (6th Cir. 1989) (quoting 29 U.S.C. § 1051(2)). Although a top hat plan is subject to ERISA's reporting and enforcement provisions, it is exempt from ERISA's funding, participation, vesting,

and fiduciary duty provisions, including the written plan document requirement.[6] *See Simpson v. Mead Corp.*, 187 Fed. Appx. 481, 484 (6th Cir. 2006).

Top hat plans are unfunded, which means that they are "payable from the general assets" of the employer as opposed to a plan payable from "a *res* separate from the ordinary assets of the corporation." *Barrowclough v. Kidder, Peabody & Co., Inc.*, 752 F.2d 923, 932 (3d Cir. 1985), *overruled on other grounds*, *Pritzker v. Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110 (3d Cir. 1993). Not "only must the plan be unfunded, it must exhibit the required purpose and it must also cover a 'select group' of employees." *Bakri*, 2005 U.S. Dist. LEXIS 26076, at *8 (citing *In re New Valley Corp.*, 89 F.3d 143, 148 (3rd Cir. 1996)). The "select group" limitation has both quantitative and qualitative restrictions. *In re New Valley*, 89 F.3d at 148. "In number, the plan must cover relatively few employees" and in "character, the plan must cover only high level employees." *Id.* "The purpose of the 'top hat' exception to ERISA coverage has been characterized by the Department of Labor as a recognition by Congress 'that certain individuals, by virtue of their positions or compensation level, have the ability to affect or substantially influence, through negotiations or otherwise, the design and operation of their deferred compensation plan . . . and would, therefore, not need the substantive rights and protections of' ERISA." *Bakri v. Venture Mgf. Co.*, 473 F.3d 677 (6th Cir. 2007) (citing DOL, Office of Pension & Welfare Benefit Programs, Opinion 90-14A, 1990 WL 123933 at *1 (May 8, 1990)).

In this case, the parties do not dispute that the Of-Counsel Plan is covered by ERISA,

---

[6]Pursuant to the final treasury regulations under Code Section 409A, top hat plans must be in writing no later than December 31, 2008 in order to avoid negative tax consequences for the participants.

was unfunded and that its purpose was to provide deferred compensation. The dispute is whether the Of-Counsel Plan served a "select group" of employees. The United States Court of Appeals for the Sixth Circuit has explained:

> In determining whether a plan qualifies as a top hat plan, we consider both qualitative and quantitative factors, including (1) the percentage of the total workforce invited to join the plan (quantitative), (2) the nature of their employment duties (qualitative), (3) the compensation disparity between top hat plan members and non-members (qualitative), and (4) the actual language of the plan agreement (qualitative).

*Bakri*, 473 F.3d at 678-79.

The burden is on Defendant to show that the Of-Counsel Plan is a top hat plan. *See Barrowclough v. Kidder, Peabody, Inc.*, 752 F.2d 923, 932 (3rd Cir. 1985); *see also Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989) ("[A]ny heightened burden of proof required by the substantive law … must be satisfied by the respondent.").

### a. The percentage of the total workforce invited to join the top hat plan and the compensation disparity between top hat plan members and non-members.

Defendant argues that the percentage of the total workforce invited to participate in the Of-Counsel Plan ranges from 1.8% to 4.7% over the years of Plaintiff's employment with the Firm and the average annual compensation of those who participated in the Of-Counsel Plan ranged from 1.8 to 4.4 times the average annual compensation of the Firm's employees who were associate attorneys and staff. (Doc. # 25, Ex. B: Affidavit of Melvin Weinstein[7] ("Weinstein Aff.") ¶ 3. Plaintiff, however, contends that these figures are inaccurate because they do not include the directors. This Court agrees.

---

[7] Mr. Weinstein is a director and shareholder of the Firm and was same during Plaintiff's entire employment. Weinstein Aff. ¶ 1.

First, there were 29 directors who were invited to join the top hat plan at the Firm, *i.e.*, the Director Plan. As Defendant reported in writing to the DOL, these individuals consisted of a select group of highly compensated individuals. Thus, Plaintiff must be added to <u>this</u> group to obtain the total number of highly compensated individuals that are participants in the Firm's top hat plan (or plans). Second, Plaintiff's salary must also be compared to the salary of the total workforce– not just the associate attorneys and staff. *See Bakri*, 473 F.3d at 678-79. That is, it must also include the salary of the directors. This Court lacks the information needed to make these relevant comparisons.

Consequently, the Court concludes that Defendant has failed to meet its burden of showing that these factors weigh in favor of finding the Of-Counsel Plan a top hat plan.

### b. The nature of Plaintiff's employment duties.

Defendant contends that Plaintiff's employment duties are more similar to those of the directors of the Firm than to associate attorneys because the primary difference is that Plaintiff does not have a vote at the director meetings, although he is requested to and often does attend and participate actively in the directors' meetings. Pl. Dep. at 31. This Court disagrees with Defendant's conclusion.

Top hat plan exemptions from the majority of ERISA's requirements is Congress' recognition that certain individuals do not need the protections afforded by ERISA's substantive rights because, due to their position or level of compensation, they have the ability to substantially influence the design and operation of their deferred compensation. *Bakri*, 473 F.3d at 678. Defendant argues that the Of-Counsel Plan is the same as the Director Plan, yet there is no dispute that Plaintiff had no vote in the adoption of the Director Plan. Here, Plaintiff was not

afforded the opportunity to vote, and therefore he clearly could not substantially influence the terms of the Plan that Defendant attempts to apply to him.  The Court concludes that Plaintiff's job duties were more like those of the associate attorneys in the present analysis.

Accordingly, this factor weighs in favor of the conclusion that the Of-Counsel Plan is not a top hat plan.

### c. The actual language of the Of-Counsel Plan agreement.

Defendant contends, and Plaintiff does not dispute, that this factor is "inapplicable" in this case because the Of-Counsel Plan "is an oral ERISA plan."  Thus, this Court will accept that this factor does not weigh in favor of either parties' position and defer analysis of the terms of the Of-Counsel Plan to the section below.

### d. Conclusion to top hat plan analysis.

In summary, Defendant has failed to show that three of the four factors of the select group test weigh in favor of its conclusion that the Of-Counsel Plan is a top hat plan.

Further, Plaintiff submits the DOL Reporting Letter, dated September 30, 1992, a week after adopting the Director Plan, from the Firm to the DOL, in which Defendant represented that it maintained only one top hat plan for the purposes of providing deferred compensation for a "select group of management or highly compensated employees," *i.e.*, the Director Plan.  Ex. 8.[8]

---

[8] Defendant's attempt to explain this self identifying report is unpersuasive.  That is, Defendant argues that once it reported to the DOL in 1992, it fulfilled its obligation under the "Regulations Section 2520.104-23 applicable to top hat plans and is not required to file any amended or updated correspondence with the DOL regarding any additional or new top hat plans, including the of-counsel plan." (Doc. # 28 at 4, n.1.)  The problem with this argument is that the Of-Counsel Plan was not an "additional" or "new" top hat plan.  Indeed, there is no dispute that the parties entered into the Of-Counsel Plan at the initiation of Plaintiff's employment at the Firm in 1988.

Moreover, Plaintiff submits the October 1992 Memorandum, in which an employee of the Firm explains that there were "substantive differences" between the Director Plan and the "Deferred Compensation Arrangement for Of Counsel," *i.e.*, the Of-Counsel Plan.  October 1992 Memorandum at 1.  And, finally, Plaintiff also submits the January 1994 Memorandum, which is addressed to a director of the Firm, Allen Handlan, with copies to other managing directors:

> A deferred compensation "plan" must be for the benefit of a select group of "highly compensated" or "management" employees in order to avoid the participation, funding and vesting requirements of ERISA.  All Directors are included in the [Defendant's] Nonqualified Retirement Plan ("Plan"), regardless of compensation, because each actually engages in managerial functions as the Firm is currently structured.  Of Counsel could not participate in the Plan because they have no vote (and therefore cannot be considered "management") and may not be paid a sufficient amount to be considered "highly compensated."  The law is vague as to what constitutes "highly compensated" in this context.
>
> Therefore, it has been my suggestion that each Of Counsel execute a separate Deferred Compensation Letter Agreement which must differ in some substantive respect from the Plan and may, in fact, differ from the Letter Agreement of each other Of Counsel.  A substantive difference would be one relating to how benefits are calculated, how benefits are paid, when benefits commence, etc.

January 1994 Memorandum at 1.

Thus, the Court concludes that, even when viewing the evidence in the light most favorable to Defendant, and drawing all reasonable inferences in its favor, Defendant has failed to raise a genuine issue of material fact as to whether the Of-Counsel Plan constitutes a top hat plan–it does not.[9]  Accordingly, the Court **GRANTS** Plaintiff's Motion for Summary Judgment on this issue and **DENIES** Defendant's motion for summary judgment on same.  Specifically,

---

[9]The Court notes that, once an ERISA benefit plan is established, like here, "ERISA operates to protect an employee's interest in the welfare benefit program regardless of whether the employer complies with the administrative and reporting requirements detailed under ERISA."  *Brown v. Ampco-Pittsburgh Corp.*, 876 F.2d 546, 551 (6th Cir. 1989).

this Court holds that the Of-Counsel Plan does not constitute a top hat plan as that phrase is interpreted under ERISA.

### 2. What are the terms of the oral Of-Counsel Plan?

Plaintiff contends that the Of-Counsel Plan is payable to him immediately upon his leaving the Firm and that he is not subject to a non-compete agreement.  Defendant, however, argues that the terms of the Of-Counsel Plan are the exact same as the terms of the Director Plan.  Defendant further claims that, if the terms of the terms are not the same, then there was no meeting of the minds and, as a matter of law, there was no mutual assent with regard to contract formation and Plaintiff is not entitled to any deferred compensation at all.

#### a. The Of-Counsel Plan is a contract.

Defendant argues that, if Plaintiff does not agree with it as to the terms of the Of-Counsel Plan (*i.e.*, that they are the same as the terms of the Director Plan), there was no meeting of the minds and, as a matter of law, there was no mutual assent with regard to contract formation rendering Plaintiff with no entitlement to any deferred compensation or retirement.  This Court disagrees.

When interpreting ERISA plans, federal courts apply "general rules" of contract law as part of the federal common law.  *See, e.g., Hunter v. Caliber Sys., Inc.*, 220 F.3d 702, 712 (6th Cir. 2000); *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998).  In developing such federal common law, a federal court may take direction from the law of the state in which it sits, or it may generally review law on the issue and adopt a federal rule.  *Regents of the Univ. of Michigan v. Agency Rent-A-Car*, 122 F.3d 336, 339 (6th Cir. 1997).  Under Ohio law, a valid contract consists of an offer, acceptance, and consideration.  *Tersigni v. Gen. Tire, Inc.*, 91 Ohio

App.3d 757, 760 (1993).

Here, the parties do not dispute that there was an offer of employment, an acceptance of that offer and consideration for that offer and acceptance, *i.e.*, a salary and deferred compensation/retirement account according to the Formula Compensation System as consideration for Plaintiff's employment with the Firm. Indeed, for twenty years the parties performed that contract without dispute.

As to Defendant's "meeting of the minds" argument, although some Ohio opinions "require that there be a 'meeting of the minds' in order for there to be mutual consent. . . . the [Ohio Jury Instructions] Committee believes that [that language] is potentially misleading and no longer appears in modern contract doctrine . . . ." Comment to Ohio Jury Instructions – Civil 253.03 (2007). *Cf. Gist v. GMC*, 130 Fed. Appx. 9, 11 (6th Cir. 2005) (relying on Ohio Jury Instructions and comment thereto for burden of proof). "Ohio law is also clear, however, that this standard is objective and does not require that there be subjective agreement by the parties." *Id.* Thus, simply because the parties now disagree as to some of the terms of the Of-Counsel Plan, it does not render the entire contract, which has been performed for twenty years, void.

### b. There is a material issue of fact as to the terms of the Of-Counsel Plan.

Defendant submits the testimony of one of its partners/directors as evidence that the terms of the Of-Counsel Plan "can only be determined by reference to the [Director] Plan, which is a memorialization of the [Firm]'s intent regarding the deferred compensation accounts of all attorneys who were compensated on the '[Formula Compensation System].' " (Doc. # 28 at 4-5) (citing Weinstein Dep. at 19, 23-25).) Specifically, Defendant submits:

> [I]t was the firm's intent that, absent a specific agreement to the contrary, [Plaintiff] and other of-counsel would be treated in all material respects as the

>firm's directors would be treated under the Retirement Plan. If of-counsel left the Firm prior to age 65, and did not compete with the firm by engaging in the private practice of law in the State of Ohio, beginning at age 65 they would receive the vested amount of their retirement account in 84 equal monthly installments.

Weinstein Dep. at 23-25; Director Plan Section 5.4. In other words, the Director Plan contains the exact terms as does the oral Of-Counsel Plan.

Contrarily, Plaintiff testifies that it was his understanding that he would be entitled to the entire amount in his deferred compensation/retirement account at the time he left the Firm and that he was not party to a non-compete agreement with the Firm. Pl. Dep. at 11-14, 58-59.

Further, Plaintiff relies on the DOL Reporting Letter, the October 1992 Memorandum, and the January 1994 Memorandum for the proposition that the terms of the Of-Counsel Plan are not the same as the terms of the Director Plan.

The Court concludes that there is a genuine issue of material fact that is not for this Court to decide on motion. That is, what the terms of the Of-Counsel Plan consist of "presents a sufficient disagreement to require submission to a jury." *Hamad*, 328 F.3d at 234-35 (quoting *Anderson*, 477 U.S. at 251-52). Accordingly, the Court **DENIES** both parties' motions for summary judgment on this issue.

### IV. CONCLUSION

Based on the foregoing, the Court **GRANTS in part and DENIES in part** Plaintiff's Motion for Summary Judgment (Doc. # 23) and **DENIES** Defendant's Motion for Summary Judgment (Doc. # 25) and Defendant's Motion to Strike (Doc. # 24). Specifically, the Court concludes that the Of-Counsel Plan does not constitute a top hat plan under ERISA and that a genuine issue of material fact exists as to the terms of the Of-Counsel Plan.

**IT IS SO ORDERED.**

**/s/ Gregory L. Frost**
**GREGORY L. FROST**
**UNITED STATES DISTRICT JUDGE**